UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MARIA SOCORRO AMEZCUA,  ) No. CV 16-6204-PLA
        Plaintiff, ) **MEMORANDUM OPINION AND ORDER**
   v. )
NANCY BERRYHILL, ACTING )
COMMISSIONER OF SOCIAL )
SECURITY ADMINISTRATION, )
        Defendant. )

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 18, 2016, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on September 8, 2016, and October 6, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on May 11, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on March 3, 1960. [Administrative Record ("AR") at 33, 123.] She has past relevant work experience as a cook's helper. [AR at 33, 50.]

On December 31, 2012, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since May 7, 2007. [AR at 26, 123-26.] After her application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 26, 82-83.] A hearing was held on September 25, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf with the aid of an interpreter. [AR at 40-54.] A vocational expert ("VE") also testified. [AR at 49-54.] On February 12, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from May 7, 2007, the alleged onset date, through December 31, 2014, the date last insured. [AR at 26-35.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 18-20.] When the Appeals Council denied plaintiff's request for review on June 17, 2016 [AR at 7-11], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 7, 2007, the alleged onset date.[2] [AR at 28.] At step two, the ALJ concluded that plaintiff has the severe impairment of degenerative disc disease of the lumbar spine. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. [AR at 28.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
(continued...)

20 C.F.R. § 404.1567(c),[4] except she:

> [C]an stand and walk six of eight hours, cumulatively; can sit six of eight hours, cumulatively; can understand and remember tasks; can sustain concentration and persistence; can socially interact with the general public, coworkers, and supervisors; and can adapt to workplace changes frequently enough to perform unskilled, low stress jobs that require simple instructions.

[AR at 29.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a cook's helper.[5] [AR at 33, 50-51.] The ALJ made an alternative finding at step five that there are other jobs existing in the national economy that plaintiff is also able to perform, including work as a "hand packager" (<u>Dictionary of Occupational Titles</u> ("DOT") No. 920.587-018), "machine feeder" (DOT No. 699.686-010), and "furniture cleaner" (DOT No. 709.687-014). [AR at 34.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from May 7, 2007, the alleged onset date, through December 31, 2014, the date last insured. [<u>Id.</u>]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the Appeals Council erred when it found that the new evidence she submitted to it after the ALJ's decision had been issued did not provide a basis for changing the ALJ's decision; and that the ALJ erred when he (1) failed to consider whether an "advanced age" categorization should be used; and (2) failed to take into account whether plaintiff is able to

---

[3](...continued)
See <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[5] In his decision, the ALJ stated that plaintiff was capable of performing past relevant work. [AR at 33.] The Joint Stipulation's summary, which states that the ALJ decided plaintiff could *not* perform her past relevant work, appears to be in error. [JS 3.]

communicate in English. [JS at 4-17.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    NEW EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

**1.    Legal Standard**

Where, as here, the Appeals Council denies review, the decision of the ALJ is the final decision of the Commissioner. Sam, 550 F. 3d at 810. However, any additional evidence considered by the Appeals Council in denying the request for review becomes part of the administrative record for review by the district court. Brewes v. Astrue, 682 F.3d 1157, 1163 (9th Cir. 2012) (citing Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999)). Under agency regulations, the Appeals Council must consider additional evidence that is new, material, and relates to the period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b)[6]; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232-33 (9th Cir. 2011) (remanding to ALJ where it was apparent from Appeals Council's denial of review that it had not considered plaintiff's additional evidence); see also Lamp v. Astrue, 531 F.3d 629, 632-33 (8th Cir. 2008) (remanding where it was not clear from the record whether the Appeals Council had considered plaintiff's additional evidence). New evidence is material if it bears "directly and substantially on the matter in dispute." Luna v. Astrue, 623 F.3d 1032, 1034 (9th Cir. 2010) (quoting Booz v. Sec'y of Health Human Serv., 734 F.2d 1378, 1380 (9th Cir. 1984) (citation omitted)). Remand is necessary where there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. Booz, 734 F.2d at 1380-81 (citation omitted).

Here, the ALJ found plaintiff's RFC for medium work to be consistent with records reflecting plaintiff's (1) "normal posture and gait," (2) her limited physical therapy treatment, (3) her failure

---

[6] Title 20 C.F.R. § 404.970 provides that "[i]f new and material evidence is submitted, the Appeals Council <u>shall consider</u> the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ's] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b) (emphasis added).

6

to follow up on an authorization for a "conservative [sacroiliac] joint injection," and (4) her use of only conservative pain medication. [AR at 31.] He gave great weight to the August 14, 2013, opinion of the consultative examiner who opined plaintiff could do "medium work due to lumbar strain." [Id. (citation omitted).] After the ALJ's decision, plaintiff submitted to the Appeals Council several months of medical records from Dr. Eamonn Mahoney and physician's assistant Seung Hee Moon ("PA Moon") who treated plaintiff under the supervision of Dr. Shie-Kwan Fok. [AR at 842-62.] The Appeals Council "considered" the "additional evidence" and decided that the "information [did] not provide a basis for changing the [ALJ's] decision." [AR at 8.]

Plaintiff contends that the new evidence submitted to the Appeals Council undermines the ALJ's RFC finding that plaintiff is capable of performing medium level work. [JS at 5.]

For the reasons set forth below, the Court finds that in light of the evidence submitted to the Appeals Council, the ALJ's decision is not supported by substantial evidence and remand is required for proper consideration of the medical records dating from October 2014 to March 2015.[7]

### 2. The New Evidence Directly Refutes the Evidence Relied upon by the ALJ

#### a. Normal Posture and Gait

While evidence presented to the ALJ reflected that between March 2014 and July 2014, Dr. Mahoney reported that plaintiff had a "balanced and symmetrical gait," the new evidence presented to the Appeals Council shows that in October 2014, December 2014, and March 2015, PA Moon reported that plaintiff's gait was "unsteady" and that she had a "limp."[8] [AR at 826, 850,

---

[7] Although the March 2015 records fall after the date last insured, these reports "relate to" the time period considered by the ALJ because they report on the same condition plaintiff claimed as the basis of her disability.

[8] While the new evidence was recorded by the physician's assistant ("PA") rather than the physician himself, the Commissioner has explained that "[with] the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as . . . physician's assistants . . . , have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians . . . ." Soc. Sec. Ruling 06-03p (see infra note 13). Thus, these opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along
(continued...)

854, 859.]

Defendant argues that because Dr. Mahoney also reported a "balanced and symmetrical" gait in October 2014 and December 2014, the new evidence provided by PA Moon, which is dated around that same time, does not undermine the ALJ's finding that an RFC for medium work is supported by the record. However, defendant fails to mention that in October and December 2014, Dr. Mahoney also reported slow and guarded body movement, positive supine straight leg raising on the left, and reduced spinal range of motion. [AR at 842-43.] He diagnosed plaintiff with lumbrosacral spondylolysis, lumbago, lumbar region spinal stenosis, and lumbar disc disorder/myelopathy. [AR at 844.] When considered with Dr. Mahoney's diagnosis and additional findings, and the record as a whole, the new evidence (that plaintiff had an "unsteady" gait and a "limp") provides substantial evidence that directly undermines the ALJ's reliance on Dr. Mahoney's finding of a balanced and symmetrical gait to support an RFC for medium work. Thus, the Appeals Council erred by failing to find that the new "information [did] not provide a basis for changing the [ALJ's] decision." [AR at 8.] See Decker v. Berryhill, 856 F.3d 659, 665 (2017) (because the new evidence "directly undermined the basis of the ALJ's analysis, we concluded that the Commissioner's decision was 'not supported by substantial evidence'") (citing Brewes, 682 F.3d at 1157).

### b. **Limited Physical Therapy Treatment**

The ALJ also reasoned that plaintiff's RFC for medium work was consistent with plaintiff's limited physical therapy treatment, which consisted of five sessions in five months. [AR at 31-32.] This reasoning is also undermined by the new evidence, which shows that plaintiff was in fact continuing her back exercises at home under the treatment of Dr. Fok. [AR at 860.]

/

---

[8](...continued)
with other relevant evidence in the file." Walker v. Colvin, 2013 WL 1338844 at *5 (C.D. Cal. Mar. 28, 2013).

8

1                     **c.     Failure to Receive Authorized Sacroiliac Joint Injections**

The ALJ further reasoned that plaintiff's RFC for medium exertion work was consistent with plaintiff's failure to pursue the sacroiliac ("SI") joint injection[9] authorized on July 24, 2014. [AR at 31, 827.] The record reflects, however, that the "plan" was to obtain authorization, not that the injection had actually been authorized. [AR at 827.] The ALJ points to no other evidence showing the SI joint injection had indeed been authorized at that time. Additionally, the new evidence directly refutes this finding. PA Moon recommended an SI joint injection on October 30, 2014 [AR at 859], which was scheduled for January 2015. [AR at 855.] Plaintiff received the epidural injection on March 13, 2015. [AR at 850.] PA Moon also noted that plaintiff had undergone a previous epidural injection in 2008 that provided "few months of relief." [AR at 859.] Thus, the new medical records undermine this reason upon which the ALJ relied in finding an RFC for medium work.

                    **d.     Conservative Pain Medication**

The ALJ explained that plaintiff's RFC for medium work was consistent with her "use of only a conservative pain medication regime." [AR at 31.] However, the new medical records, which reflect plaintiff's lumbar epidural injections, demonstrate that plaintiff's treatment was not conservative.

"Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious

---

[9] While the ALJ refers to the sacroiliac joint injection as an "SI joint injection," plaintiff's doctors refer to the procedure interchangeably as a "lumbar epidural injection" [AR at 850], as well as an "SI joint injection." [AR at 844.]

medical treatment for [a claimant's] supposedly excruciating pain."[10] Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.1999). While plaintiff was being treated with prescribed dosages of anti-inflammatory medications at the time of the hearing, the new evidence demonstrates that more aggressive forms of treatment have since been pursued. The fact that plaintiff was authorized to receive and then underwent at least two lumbar epidural injections [AR at 850, 859], demonstrates that her treatment was not limited to only conservative pain medication, and, in any event, plaintiff submits that her pain medication was taken at a prescribed dosage larger than what is available over-the-counter. [JS at 16-17.] While there is no precise legal definition of what constitutes "conservative treatment" regarding prescribed dosages of over-the-counter medication, it has been recognized that spinal epidural injections are not "conservative" treatment. See, e.g., Harvey v. Colvin, 2014 WL 3845088, at *9 (C.D. Cal. Aug 5, 2014) (injections to the cervical region consisting of stellate ganglion blocks that were not entirely effective did not support ALJ's reliance on conservative treatment to support an adverse credibility finding) (citing Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec.12, 2006) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications)). Thus, because the new evidence directly undermines the ALJ's reasons for finding plaintiff capable of performing medium work, remand is warranted on this issue. See Decker, 856 F.3d at 665.

### 3. Other Reasons Not Supported by Substantial Evidence

The ALJ also found that plaintiff's RFC for medium work was supported by her failure to pursue back surgery, failure to pursue chiropractic or acupuncture therapy treatment, and failure to document persistent use of a back brace. [AR at 31.] This reasoning is largely unsupported as none of plaintiff's treating or examining doctors during the time period in question[11] had

---

[10] Thus, the fact that an epidural was even authorized for plaintiff is relevant to a finding that her treatment was not conservative, regardless of whether or not she underwent the procedure.

[11] Plaintiff notes that "it is administratively final that [she] is not eligible for benefits up through
(continued...)

10

suggested that plaintiff consider back surgery, chiropractic or acupuncture therapy treatment, or that she use her back brace on more than an "as needed" basis. [AR at 754-841.] While the ALJ may "rely, in part, on his or her own observations," the ALJ may not "substitute [his] own layperson opinion for that of trained medical physicians." Garcia v. Astrue, 2011 WL 4479843, at *8 (E.D. Cal. Sept. 26, 2011). That is because -- although the layperson may think that someone experiencing back pain should pursue surgery, or seek chiropractic or acupuncture therapy, or always use a back brace -- "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990). As such, the ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 996, 970 (7th Cir. 1996). Therefore, the ALJ's reasoning that plaintiff's failure to pursue treatments that were otherwise not recommended by any doctor supports an RFC determination for medium work, is itself unsupported by the record. Remand is warranted on this issue.

**B.     FAILURE TO CONSIDER USING ADVANCED AGE CATEGORY**

Plaintiff also argues that the ALJ erred when he did not consider whether plaintiff should be recognized as a person of "advanced age" rather than a person "closely approaching advanced age." [JS at 14.]

Social Security regulations require that the age categories not be applied mechanically in borderline situations. 20 C.F.R. § 404.1563(b). If the claimant is "within a few days to a few months of reaching an older age category, and the older age category would result in a determination or decision that [the claimant] is disabled, [the ALJ] will consider whether to use the older age category." Id.

Here, plaintiff's date last insured fell just over two months prior to the date of her 55th birthday, the day she would be considered a person of advanced age. [JS at 14.] At the time of the decision, the ALJ found that plaintiff had an RFC for medium work. [AR at 29.] When a

---

[11](...continued)
June 22, 2012," when plaintiff's previous claim for DIB was denied, and thus, the most relevant records are those dated just prior to June 2012. [JS at 10.]

claimant has an RFC for medium work, an age categorization of "advanced age" versus "closely approaching advanced age" does not alter the disability determination. 20 C.F.R., pt. 404, subpt. P, app. 2, § 203. Thus, the ALJ was not *required* to consider using the older age category at the time of his decision. However, because the matter is being remanded for the ALJ to reconsider plaintiff's RFC in light of the new evidence, the ALJ on remand shall also consider whether to use the older age category pursuant to 20 C.F.R. § 404.1563(b).

## C.    FAILURE TO CONSIDER ENGLISH LITERACY

Plaintiff argues that the ALJ erred in failing to take into account her lack of literacy in English when making his disability determination. Specifically, she notes that while the ALJ acknowledged that plaintiff completed the 12th grade [AR at 50], he failed to recognized that plaintiff's education was completed in Mexico, and in Spanish. [JS at 12.]

Social Security regulations take into account English literacy and the ability to communicate in English when determining a claimant's education as a vocational factor. 20 C.F.R. § 404.1564(b)(5). The ability to communicate in English is specifically important because "English is the dominant language of [this] country" and as such, retaining a job may be difficult for someone without English skills, "regardless of the amount of education the person may have in another language." Id. It is the Commissioner's burden to establish that a claimant is literate in English. Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000).

Here, there is insufficient evidence to determine plaintiff's literacy. The disability report indicates both that plaintiff *cannot* "speak or understand English," and that plaintiff *can* "read and understand English." [AR at 175.] There is also evidence that plaintiff was given medical instructions in Spanish[12] [AR at 808], and she testified at the administrative hearing with the assistance of a Spanish interpreter. [AR at 42.] However, while the ALJ recognized plaintiff's education level, he failed to determine whether or not plaintiff was literate in English. See Silveira,

---

[12] A report from the doctor's office demonstrates that the nurse gave medical instructions to plaintiff in a mix of both English and Spanish. [AR at 810, 812.]

12

204 F.3d at 1261 (en banc panel unanimously remanded case where the ALJ failed to make an express finding of the plaintiff's English literacy and there was insufficient evidence in the record to determine plaintiff's English literacy).

Defendant argues that plaintiff waived the issue of literacy by failing to raise it at the administrative hearing at which she was represented by counsel. [JS at 23 (citing Meanel, 172 F.3d at 1115) ("at least when claimants are represented by counsel, they must raise all issues and evidence at the administrative hearings in order to preserve them on appeal").] However, the Supreme Court has called this finding into question, holding that a "judicially created issue-exhaustion requirement is inappropriate" in Social Security cases because the reasons for applying this requirement are much weaker in these types of cases. Sims v. Apfel, 530 U.S. 103, 112, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Indeed, "[c]laimants 'need not preserve issues in proceedings before the Commissioner or her delegates.'" Norris v. Colvin, 2013 WL 5379507, at *3 (C.D. Cal. Sept. 25, 2013) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)); see also Sims, 530 U.S. at 111-12 ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.").

Defendant also argues that plaintiff's use of a Spanish interpreter at the administrative hearing was taken into account in the VE's testimony because the VE was aware that plaintiff required the use of a Spanish interpreter. However, it is the ALJ who bears the burden of making the necessary inquiry of the VE. Soc. Sec. Ruling ("SSR")[13] 00-4p; Massachi, 486 F.3d at 1152-53; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel). Where, as here, the ALJ fails to present hypotheticals to the

---

[13] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

VE that accurately reflect all of the claimant's relevant characteristics, it does not become the VE's burden to correct the ALJ and utilize characteristics that the VE observes at the hearing.

Finally, defendant argues that plaintiff's prior work demonstrates that her alleged illiteracy provides no obstacle to her ability to work. [JS at 23.] This conclusion, however, is not a reason given by the ALJ. The Court reviews "only the reasons provided by the ALJ in the disability determination." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.2003) ("We are constrained to review the reasons the ALJ asserts.")).

Remand is warranted on this issue.

**D.    THE ALJ'S ERRORS ARE NOT HARMLESS**

An error is harmless where it is "inconsequential to the ultimate nondisability determination." Robbins, 648 F.3d at 728 (quoting Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006)). By contrast, an error is not harmless where "there is a reasonable possibility that [the evidence at issue] would have changed the outcome of the present case." See Booz, 734 F.2d at 1381. "[T]he burden is on the party attacking the agency's determination to show that prejudice resulted from the error." McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (citing Shinseki v. Sanders, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009)). "Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." Id. Nevertheless, the reviewing court can remand where the circumstances of the case show a substantial likelihood of prejudice from the error -- "[m]ere probability is not enough." Id. at 888.

If the ALJ finds on remand that (1) plaintiff's RFC should be reduced in light of the new evidence, and (2) the use of an advanced age category is appropriate, or (3) plaintiff is unable to communicate in English, plaintiff's RFC and/or disability determination may change.

Because the ALJ's errors -- singly or in combination -- could impact plaintiff's disability determination on remand, they are not harmless.

/

/

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the Appeals Council failed to properly consider the new medical records submitted by plaintiff, the ALJ shall reconsider the entirety of the medical evidence in light of the new evidence. In assessing the medical opinion evidence of all the doctors, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ shall consider whether it is appropriate to use the advanced age category in light of the circumstances as impacted by the new evidence. Third, the ALJ shall make a determination regarding plaintiff's literacy in English and her ability to communicate in English. Fourth, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a cook's helper. If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 31, 2017

*/s/ Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE